FILED

UNITED STATES DISTRICT COURT DEC 17 PM 4:51
MIDDLE DISTRICT OF FLORIDA US DISTRICT COURT
ORLANDO DIVISION FLORIDA
ORLANDO, FL

UNITED STATES OF AMERICA

     Plaintiff,

v.

Case No. 6:20-cv- 2306-Orl-40EJK

REAL PROPERTY LOCATED AT
3018 KINGFISHER POINT,
CHULUOTA, FL 32766,

     Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty

or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States

of America brings this complaint and alleges upon information and belief as

follows:

## NATURE OF THE ACTION

1.    This is a civil action *in rem* to forfeit to the United States,

pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and Rule G(2), the real

property, attachments thereto, and appurtenances thereon, located at 3018

Kingfisher Point, Chuluota, FL 32766 (the Defendant Property) because the

property was purchased with proceeds traceable to wire fraud, in violation of

18 U.S.C. § 1343, and involved in money laundering transactions, in violation

of 18 U.S.C. § 1957. The Defendant Property is thus property constituting or derived from proceeds traceable to a violation of an offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of Title 18), and property involved in money laundering offenses, and subject to civil forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345 and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.      Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395 because the Defendant Property is in the district. 28 U.S.C. § 1395(b).

4.      This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

5.      Pursuant to Rule G(3)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and 18 U.S.C. § 985(c)(2), a notice of this forfeiture, as well as a copy of the complaint will be posted on the real property and served on the owners of the real property. Thereafter, neither the issuance of a warrant *in rem* nor any other action will

be necessary for the Court to exercise *in rem* jurisdiction over the property.  18

U.S.C. § 985(c)(3).

## THE DEFENDANT *IN REM*

6.     The Defendant Property is the real property, attachments thereto,

and appurtenances thereon, located at 3018 Kingfisher Point, Chuluota, FL

32766.

## BASIS FOR FORFEITURE

7.     Pursuant to 18 U.S.C. § 1343, it is unlawful to "devise[] . . . any

scheme or artifice to defraud," or to "obtain[] money or property . . . by means

of false or fraudulent pretenses, representations, or promises," if the person

"transmits or causes to be transmitted by means of wire . . . communication in

interstate or foreign commerce any writings . . . or sounds . . . for the purpose

of executing such scheme or artifice." *Id.*

8.     Pursuant to 18 U.S.C. § 1957(a), it is unlawful to knowingly

engage or attempt to engage in a monetary transaction with proceeds of a

specified unlawful activity in an amount greater than $10,000 by, through, or

to a financial institution. *Id.*

9.     The Defendant Property was purchased with proceeds of a wire

fraud scheme that operated in violation of 18 U.S.C. § 1343, as set forth

further below.  Because the Defendant Property was purchased with proceeds

of a violation of 18 U.S.C. § 1343, it is subject to forfeiture pursuant to 18

U.S.C. § 981(a)(1)(C), which authorizes the United States to civilly forfeit any

property that constitutes or is derived from proceeds traceable to a "specified

unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7).  "Specified unlawful

activity," is defined in 18 U.S.C. § 1956(c)(7) to include offenses listed in 18

U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

10.     Additionally, the monetary transactions made to purchase the

Defendant Property were conducted in violation of 18 U.S.C. § 1957(a)

because they were knowingly conducted with more than $10,000 in funds

derived from specified unlawful activity (specifically, wire fraud offenses),

and, as such, the Defendant Property is subject to civil forfeiture pursuant to

18 U.S.C. § 981(a)(1)(A).

11.     As required by Rule G(2)(f), the facts set forth herein support a

reasonable belief that the government will be able to meet its burden of proof

at trial.  Specifically, they support a reasonable belief that the government will

be able to show by a preponderance of the evidence that the Defendant

Property was purchased with proceeds of wire fraud and involved in money

laundering transactions.

## FACTS

12.     Specific details of the facts and circumstances supporting the

forfeiture of the Defendant Property have been provided by Internal Revenue Service (IRS) Special Agent Jacob Stafford, who states as follows:

## I.     Overview of the Cares Act

13.     The CARES Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in SBA-guaranteed forgivable loans to small businesses through the Paycheck Protection Program (PPP). In April 2020, Congress authorized over $300 billion in additional PPP funding.

14.     The PPP allows qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of one percent. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within eight weeks of receipt and use at least 75 percent of the forgiven amount for payroll.

15.     As will be explained more fully below, Don Cisternino, on behalf of MagnifiCo, Inc. applied for a PPP loan through Fountainhead SBF, LLC. In so doing, Fountainhead was supplied with false documents/information for

5

MagnifiCo, Inc. in order to obtain the loan, and then Cisternino used the loan proceeds on purchases unrelated to the operation of his business, including the purchase of the Defendant Property.

## II.   **Relevant Participants**

16.     Cisternino and Lori Quasky are the titled owners of the Defendant Property.  Prior to purchasing the Defendant Property in July 2020, Cisternino was a resident of Manatee County in the Middle District of Florida.

17.     MagnifiCo was incorporated in the state of New York on or about May 12, 2014, with its business address listed in Rye, New York. Cisternino is the founder and registered agent of MagnifiCo. MagnifiCo's LinkedIn page provides the company overview as: "Software, Consulting, Marketing, IT, Tech, Apps, Graphics, Websites, Content, PR, Social, Talent, Literary, Professional and Personal Services, and more" and lists its web address as http://magnifico.media.  However, the webpage is not functional and has no further information about the company.

18.     Fountainhead is a national, non-bank, direct commercial lender that specializes in helping owners of small to midsize businesses finance their growth and create wealth through their SBA 504, SBA 7(a) and low LTV

conventional loan programs.  Fountainhead is incorporated in Florida with its business address located in Seminole County, Florida.

19.     Radius Bank is an FDIC insured online bank headquartered in Boston, Massachusetts.

20.     Lori Quasky is also a titled owner of the Defendant Property. According to documents provided in support of the fraudulent PPP loan and MagnifiCo's LinkedIn page, Quasky is the V.P. of marketing for MagnifiCo.

21.     Law enforcement believes that Quasky and Cisternino are involved in a romantic relationship.   Prior to purchasing the $3,499,000 Defendant Property together, the two resided together in an apartment in Bradenton, FL.  However, in August 2019, their landlord sought to evict them for failing to pay August's rent in the amount of $2,565.26 in an action filed in County Court in Manatee County. The matter was quickly resolved by stipulation of the parties after the two were able to obtain the necessary rent payment.[1]

III.   **The Scheme to Defraud**

22.     On or about April 12, 2020, Cisternino opened bank account

---

[1]   According to a document filed by Quasky and Cisternino in that action, they were behind on their rent because a couple of their clients did not timely pay them for "freelance work" they had performed for their clients.

ending in 7809 at Radius Bank in the name of MagnifiCo. Cisternino held sole

signatory authority on the bank account.

23.     On or about May 5, 2020, documents were submitted to

Fountainhead seeking a PPP loan under the CARES Act on behalf of

MagnifiCo. Multiple documents were submitted in support of the loan

application including, but not limited to, a Form 2483 Paycheck Protection

Program Borrower Application Form, a 2019 Form 1120 for MagnifiCo, a

2019 profit and loss statement for MagnifiCo, 441 2019 Form W-2s for alleged

employees of MagnifiCo, and four 2019 Form 941 Employers Quarterly

Federal Tax Returns for MagnifiCo.

24.     The Form 2483 claimed the average monthly payroll for

MagnifiCo was $2,880,000, and that the loan was being sought to assist with

payroll, lease/mortgage interest, utilities, re-hiring, new hires, and upgrading

platform.  Indeed, Cisternino initialed the Form 2483 certifying, among other

things, that the business was in operation on February 15, 2020, and had

employees for whom it paid salaries and payroll taxes or paid independent

contractors, as reported on Form(s) 1099-MISC, and that the loan proceeds

would be used to retain workers and maintain payroll or make mortgage

interest payments, lease payments, and utility payments, as specified under the

Paycheck Protection Program Rule.

8

A.  **Inconsistencies in Information Provided by MagnifiCo to Fountainhead for the PPP Loan**

25.    The first inconsistency in the information provided to Fountainhead were the 441 Form W-2s submitted to Fountainhead contained two Form W-2s in the names of S.A.W. and I.M. with incomplete Social Security numbers; 16 Form W-2s contained duplicate Social Security numbers (only eight unique Social Security numbers were used to create 16 Form W-2s); 130 Form W-2s contained Social Security numbers that were never issued to an individual (this number does not include the two incomplete Social Security numbers); and 150 Form W-2s contained Social Security numbers issued to an individual other than the person listed on the Form W-2.[2]

26.    Second, the information provided to Fountainhead about MagnifiCo's Employer Identification Number (EIN) was inconsistent.  The Form 2483 reported MagnifiCo's EIN to be 46-5656635, but the Form SS-4, Form 941s, Form 1120 and Form W-2s provided in the loan file reported MagnifiCo's EIN as 46-5656035.

---

[2] It was noted that the Form W-2 for Quasky is contained in this group as the first digit of Quasky's Social Security number is "0," but the Social Security number on the Form W-2 submitted to Fountainhead is a "1." The Social Security number listed for Quasky belongs to M.C.B. The remaining digits on the Form W-2 submitted for Quaksy to Fountainhead match Quasky's Social Security number.

27.     Third, the documents provided to Fountainhead included inconsistencies in the total amount of wages for MagnifiCo. Specifically, the Form 941s and Form 1120 both reported total wages of $37,440,000. However, the aggregate amount of wages from the 441 Form W-2s totaled $37,435,000. The amount of wages listed on these forms should have all been the same.

28.     Fourth, the documents provided to Fountainhead also included inconsistencies in MagnifiCo's Federal Income Tax Withholdings (FITW). Specifically, the Form 941s contained a total of $2,246,409.00 in FITW, but the 441 Forms W-2s totaled $2,246,438.00 in FITW.  Again, these amounts should all be the same.

29.     Fifth, the 2019 profit and loss statement submitted to Fountainhead contained basic math errors.

30.     Sixth, the 441 Form W-2s submitted to Fountainhead contained six Form W-2s with incorrect calculations for Social Security Tax Withholdings and Medicare Tax Withholdings.  Specifically, Social Security Tax Withholdings are calculated by multiplying the wage amount by 6.2% and Medicare Tax Withholdings are calculated by multiplying the wage amount by 1.45%.[3]  However, in this case, the six Form W-2s used variable

---

[3] This is the portion to be paid by the employee and reflected on the Form

10

calculations to determine the Social Security Tax Withholdings and Medicare Tax Withholdings. In my experience this is an extremely odd occurrence since the rest of the Form W-2s have the correct calculations, including some Form W-2s reporting the same wage amounts. Further, these figures are normally automatically calculated and for the numbers to be correct on most, but incorrect on others, shows the Form W-2 appears to have been engineered to apply for the PPP loan and not generated in the normal course of business.

31.    There were also 158 Form W-2s with Social Security numbers that were issued to the individual listed on the Form W-2. However, three of 'those individuals were deceased; two died in 2018 and the third died on March 7, 2019.

32.    Additionally, the 441 Form W-2s submitted to Fountainhead reported the following exact wage amounts and FITW:

|       |           | Count |
|-------|-----------|-------|
| Wages | 65,000.00 | **1** |
| FITW  | 3,118.00  | 1     |
| Wages | 70,000.00 | **1** |
| FITW  | 6,726.50  | 1     |
| Wages | 75,000.00 | **23**|
| FITW  | 2,156.00  | 22    |
| FITW  | 3,668.00  | 1     |

W-2. If the employee earns over $200,000 there is an additional .09% paid by the employee, but this does not factor into this scenario as all employees earned under $95,000.

11

| | | |
|---|---:|---:|
| Wages | 80,000.00 | **86** |
| FITW | 2,756.00 | 84 |
| FITW | 4,414.00 | 2 |
| Wages | 85,000.00 | **223** |
| FITW | 3,356.00 | 108 |
| FITW | 3,859.96 | 1 |
| FITW | 6,330.50 | 16 |
| FITW | 6,380.00 | 14 |
| FITW | 6,884.00 | 8 |
| FITW | 7,254.50 | 16 |
| FITW | 8,178.50 | 15 |
| FITW | 9,102.50 | 15 |
| FITW | 10,026.50 | 18 |
| FITW | 10,950.50 | 12 |
| Wages | 90,000.00 | **86** |
| FITW | 3,956.00 | 16 |
| FITW | 4,460.00 | 11 |
| FITW | 4,556.00 | 2 |
| FITW | 4,964.00 | 3 |
| FITW | 5,468.00 | 5 |
| FITW | 5,564.00 | 1 |
| FITW | 5,582.50 | 4 |
| FITW | 6,476.00 | 3 |
| FITW | 6,505.50 | 1 |
| FITW | 6,506.50 | 4 |
| FITW | 6,979.96 | 4 |
| FITW | 7,430.28 | 8 |
| FITW | 7,484.00 | 3 |
| FITW | 8,354.32 | 4 |
| FITW | 8,354.50 | 5 |
| FITW | 9,278.50 | 5 |
| FITW | 10,202.40 | 1 |
| FITW | 10,202.50 | 4 |
| FITW | 11,126.50 | 2 |
| Wages | 95,000.00 | **19** |
| FITW | 2,756.00 | 1 |

| FITW  | 4,556.00  | 17 |
|-------|-----------|----|
| FITW  | 5,564.00  | 1  |
| Wages | 97,500.00 | **2** |
| FITW  | 4,556.00  | 1  |
| FITW  | 7,460.28  | 1  |

The above FITW calculations appear to be false/fictitious based not only on the fact of repeat exact amounts, but also whole dollar amounts (*i.e.*, there are a large portion of the above figures ending in .00, which is not a common occurrence at such a high rate for whole dollar amounts). Moreover, Cisternino claimed that 108 employees made exactly $85,000 in salary, and all had the exact same tax situation to generate $3,356 in FITW. However, FITW is calculated based on multiple factors such as total wages, filing status,[4] and number of exemptions,[5] so it would be highly unusual for that many people to have identical amounts of FITW. Further, the total FITW for all 441 Form W-2s was $2,246.438.00, which, when evenly divided by quarter, comes to $562,109.50. The total amount of FITW on the Form W-2s has the appearance of being a predetermined number with the goal of being evenly divisible by four so that it creates a simple calculation for the 941 Forms

---

[4] For example, single or married filing separately, married filing joint, or head of household.

[5] For example, the number of dependents an individual can claim along with additional withholdings depending on an individual's tax situation or the individuals combined tax situation with a spouse.

submitted to Fountainhead,[6] and not an honest calculation by a business calculating a tax liability.

33.     Based on all the above inconsistencies contained in the 2019 Form 1120, 2019 profit and loss statement, 441 2019 Form W-2s for alleged employees of MagnifiCo, and four 2019 Form 941 Employers Quarterly Federal Tax Returns, it is believed these documents are false/fictitious and were submitted in order to obtain a PPP loan for MagnifiCo that the company was not entitled too.

## IV.     The Funding of the Fraudulently Obtained PPP Loan

34.     On or about May 27, 2020, MagnifiCo's PPP loan was approved by Fountainhead in the amount of $7,210,000.  The following day, the funds were wired into MagnifiCo's Radius Bank account ending in 7809 from Fountainhead's account ending in 5588 at Capital One N.A.[7]  Prior to this deposit, the account balance was $89.44.

35.     After the funding of the loan, the following notable purchases were made using the funds in the Radius Bank account ending in 7809:

---

[6] As noted above, this figure does not match the total of FITW listed in the combined Form 941s, but it appears as a planned amount.

[7] Capital One N.A. utilizes servers in either Virginia or Oregon to handle the sending of wire payments, and Radius Bank utilizes servers in Florida to receive wire transfers.

- Check 0001, dated May 30, 2020, for $89,413.71 made payable to Alex Karras Lincoln with "Don Cisternino Lincoln Navigator"[8] in the memo line;

- Check 0005, dated June 9, 2020, for $1,440,000.00 made payable to Victor A. Cisternino with "Repayment of Loan" in the memo line;

- Check 0008, dated June 22, 2020, for $251,436.21 made payable to Mercedes-Benz of Sarasota;[9]

- Check 0009, dated June 25, 2020, for $48,477.26 made payable to Chase Auto Finance with "Maserati Payoff: Acct # 0011070037" in the memo line;

- June 26, 2020 wire transfer for $40,903.80 to Relin, Goldstein and Crane LLP;[10]

- Check 0010, dated June 28,2020, for $7,122.31 made payable to ABBA Fund with "Lori Ann Quasky-Final Payment" in the memo line;

- June 29, 2020 wire transfer for $90,600.00 to Godaddy.com;

- Check 0011, dated June 30, 2020, for $7,473.38 made payable to Nissan Motor Acceptance Corporation with "Payoff for Nissan for Lori Ann Quasky" in the memo line;

---

[8] According to records from the Driver and Information Database (DAVID), this vehicle was registered to Cisternino, but no longer has a valid registration.

[9] According to records from DAVID, Cisternino had a Mercedes Benz S650X (which has a base MSRP of $202,550) registered in his name, but no longer has a valid registration.

[10] Relin, Goldstein, and Crane LLP represented Cisternino in a matter filed by American Express Centurion Bank in the New York Supreme Court. A final judgement was entered for American Express on or about June 21, 2020.

- Check 0013, dated July 8, 2020, for $3,000.00 made payable to Rex Moving with "Deposit-Move" in the memo line;

- Check 0015, dated July 9, 2020, for $5,555.97 made payable to Gale V[illegible] with "Bradenton->Chuluota" in the memo line;

- August 10, 2020 wire transfer for $54,031.63 to Godaddy.com, with the wire detail noting "purchase of Domain iagent.com;" and

- August 18, 2020 wire transfer for $121,000.00 to Godaddy.com, with the wire detail noting "Purchase of domain Magnifico.com."

36.     Of interest, there were no checks written to any of the individuals listed on the Form W-2s supplied by Cisternino. There were no direct payments to any payroll companies, rent or utilities. A limited amount of funds were spent on what appear to be possible business purposes, including a check made payable to Colin Broderic Supermoon Productions for $327,692.30, an international wire to MK1Studios LTD for $75,000.00, and debit purchases at Toptal.com totaling $21,117.80.[11]

A.     **Purchase of the Defendant Property**

37.     On or about June 29, 2020, Cisternino wired $200,000 of the PPP fraud proceeds in the Radius Bank account ending in 7809 to Premiere

---

[11] Toptal.com is a website to hire freelance talent for projects. There were an additional $16,579.25 in debit purchases attempted at Toptal.com, but the account was over drafted and the debits were rejected.

Title Insurance Co., LLC notating a deposit for the Defendant Property in the description detail of the wire transfer. [12]

38.    On or about July 6, 2020, Cisternino wired $3,104,000 of the PPP fraud proceeds in the Radius Bank account ending in 7809 to Premiere Title Insurance Co., LLC notating "Balance of Purchase Price for 3018 KINGFISHER PT CHULUOTA FL 32766 for DON CISTERNINO, CEO MAGNIFICO INC."

39.    Public records indicate that on or about July 7, 2020, Cisternino and Quasky purchased the Defendant Property for $3,499,000, and no mortgage was filed against the property. [13]  The Defendant Property sits on twelve plus acres, and is approximately 12,579 square feet with seven bedrooms, 11 bathrooms, a four car garage, theater room, "resort style" pool and spa area, tennis courts, and a 5 stall horse barn. Below are pictures of the Defendant Property:

---

[12]  Excluding fraud proceeds, the only other deposits into the account over $100 during the relevant time frame were from interest payments and debit card reward payments.
[13]  At this time, law enforcement is not sure where the remaining $195,000 came from for the full payment towards the purchase of the Defendant Property.











## CONCLUSION

40.     As required by Supplemental Rule G(2)(f), the facts set forth

herein support a reasonable belief that the government will be able to meet its

burden of proof at trial. Specifically, probable cause exists to believe that the

Defendant Property was purchased with proceeds of a wire fraud scheme that

operated in violation of 18 U.S.C. § 1343, and property involved in money

laundering offenses, and is therefore subject to forfeiture pursuant to 18 U.S.C.

§§ 981(a)(1)(A) and (a)(1)(C).

Dated: December 17, 2020                    Respectfully Submitted,

                                            MARIA CHAPA LOPEZ
                                            United States Attorney

                            By:

                                            NICOLE M. ANDREJKO
                                            Assistant United States Attorney
                                            Florida Bar Number 0820601
                                            400 W. Washington Street,
                                            Suite 3100
                                            Orlando, Florida 32801
                                            (407) 648-7500 – telephone
                                            (407) 648-7643 – facsimile
                                            Email:
                                            nicole.andrejko@usdoj.gov

## VERIFICATION

I, Jacob Stafford, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Internal Revenue Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the Internal Revenue Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 17TH day of December, 2020.

JACOB STAFFORD
Special Agent
Internal Revenue Service

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

Real property located at 3018 Kingfisher Point, Chuluota, FL 32766

County of Residence of First Listed Defendant   Seminole
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C)
Brief description of cause:
property purchased with proceeds of violations of 18 U.S.C. § 1343 and involved in violations of 18 U.S.C. § 1957

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   12/17/20

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE